## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TANJELA LEWIS,

    PLAINTIFF,

v.                                                                     CASE NO.: CV-11-J-373-S

NOLAND HEALTH SERVICES, INC.,

    DEFENDANT.

### MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 16), brief and evidence in support of said motion (docs. 17-18), to which the plaintiff did not respond, but the defendant thereafter filed a reply (doc. 21).[1]  Having considered the pleadings, evidence and memorandum of the defendant, the court finds as follows:

### I. Factual Background

Plaintiff sues her past employer for violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981a and 42 U.S.C. § 1981 for race (black) discrimination, and termination in retaliation.  By deposition, the plaintiff also seems to be making a

---

[1] Pursuant to the scheduling order entered in this case on May 16, 2011, the plaintiff had fourteen days from the date the defendant filed its motion, brief and evidence, to respond to the motion for summary judgment.  The defendant's motion and evidence were filed on February 20, 2012, and to date, no response has been received from the plaintiff.  The plaintiff did file two notices (docs.19 and 20) requesting time to "change [] legal representation," which the court took as motions.  As there was no indication in the record that plaintiff's counsel had withdrawn, or been asked to withdraw by his client, the court denied those motions.

claim for failure to promote, although she did not make such a claim in her EEOC charge, or her complaint.

The plaintiff became an RN in May 1998 and worked as an LPN prior to that. Plaintiff depo. at 128. Since filing this action, she has completed her bachelor's degree in nursing in May 2011 and is now working on a dual masters degree in healthcare administration and business administration. *Id*. at 128-129. The plaintiff was hired by Sara Brasher, the Director of Nursing for defendant at the time, with whom she had previously worked at another job. *Id.* at 131-132, 148-149. She began working for the defendant in February 2008, after she applied for a full time weekend position. Plaintiff depo. 160-161; defendant exhibits 8 and 15 to plaintiff depo.

On June 23, 2009, the plaintiff filed a charge of discrimination with the EEOC, alleging she was placed on a 30 day action plan and then terminated based on her race. Defendant exhibit 15 to plaintiff depo.

The plaintiff alleges that as a African-American charge nurse on night shifts, she was given less staff with more patients than the white charge nurses on day shifts. Plaintiff depo. at 31-32. By working nights, the plaintiff made a shift differential of three to four dollars more per hour than day shift nurses. *Id.* at 37. She agrees that patients were not specifically added at night, that most transfers were made during the day, and that defendant had no control over when patients were referred to its facility. *Id*. at 34, 38. However, the night shift patient ratio was higher, giving the night shift

nurses heavier work loads. *Id.* at 40. She agrees that the staffing grid, used to determine the number of nurses per shift, shows one fewer nurse on staff at nights than days, and the plaintiff agreed there was nothing discriminatory about the grid. *Id.* at 75-76, 179; defendant exhibit 3 to plaintiff depo. She does not dispute that she was only short staffed based on the grid on three occasions, but asserts the staffing grid did not reflect the acuity of the patients. Plaintiff depo. at 178. The plaintiff acknowledged that short staffing is an ongoing complaint in the nursing field. Plaintiff depo. at 35-36.

As charge nurse, the plaintiff was responsible for what nurses did during her shifts. Plaintiff depo. at 217-218. In September 2008 the plaintiff sent a letter resigning from the charge nurse position to the interim Director of Clinical Staffing ("DCS"). Plaintiff depo. at 218-220, 225; defendant exhibit 16 to plaintiff depo. She was asked not to resign and resumed her position and duties. Plaintiff depo. at 222.

The plaintiff alleges she was not given the opportunity to apply for promotions because they were not posted. Plaintiff depo. at 42. However, she never looked at defendant's web site to see if job openings were posted there. *Id.* at 45. Specifically, she asserts she was more qualified than Amber Davis for the DCS position. *Id.* at 50. However, the plaintiff never applied for this position because she did not know it was available. *Id.* at 52. This position required a bachelor's degree in nursing. Declaration

3

of Donna Smaha,[2] ¶ 7. Similarly, the plaintiff claims she would have applied for the nurse manager position, but she did not know about it.[3] Plaintiff depo. at 52-53. She never told anyone she would be interested in these positions if they became available. *Id*. Her testimony regarding several liaison positions was the same. *Id*. at 54-55. The plaintiff also asserts that LPNs were allowed to fill the wound care position, although it should have been an RN job. *Id*. at 56. She does not know if this position would have been a promotion or reduction in pay for her, and she did not apply for it because she did not know it was available. *Id*. at 59-60.

The plaintiff testified she does not know if the decisions to hire the individuals who filled the above positions were adverse to her, but as an African-American nurse already employed by defendant with many years experience she would have applied for these positions had she been given the opportunity. Plaintiff depo. at 61. She asserts she would have taken these day shift positions even though it would mean less pay. *Id*.

---

[2] Donna Smaha was Chief Clinical Officer for defendant. Smaha declaration, ¶ 1. Amber Davis did not hold a BSN when she was hired for this position, but was already working toward that degree and defendant had been trying to fill the position for a long time, but was not getting qualified applicants. *Id*., ¶¶ 8-12.

[3] When Amber Davis was promoted to the DCS position, Melissa Austin was promoted to replace Davis as Nurse Manager, because Austin had previously performed that job for a different employer. Smaha declaration, ¶ 14.

The plaintiff also alleges her termination was discrimination based on her race. Plaintiff depo. at 208. She alleged in her complaint that she was terminated in retaliation for filing an EEOC charge, but agreed in her deposition she was terminated before she filed that charge.[4]  Complaint, ¶ 10; plaintiff depo. at 208-209. She believes that Amber Davis and Melissa Austin fired her because she is African-American. Plaintiff depo. at 217. She has no evidence to support this belief. *Id*. at 217, 330-331. However April Chapman, a white RN, immediately stepped in to fill her position upon her termination. *Id*. at 223.

In February 2009 the plaintiff received a written warning based on a claim that an LPN administered IV medication. Plaintiff depo. at 227-229. The plaintiff disputed this happened at the time, but also believed the patient may have received the same medication two times. *Id*. at 228-230. On April 1, 2009, as part of an April Fool's joke, the plaintiff gave made up orders to a nurse for a dressing change, allegedly on a male patient's genitals. *Id*. at 233. Melissa Austin learned about the prank and the plaintiff was later contacted by management about it, but never reprimanded. *Id*. at 241, 252, 292. However, she agrees she was lucky she was not fired for this prank. *Id*. at 292.

---

[4]Plaintiff's claim for retaliation was withdrawn during her deposition. Plaintiff depo. at 211-212.

5

The plaintiff submitted a list of complaints about Melissa Austin and Amber Davis, including that they gave some nurses better treatment and that they were setting the plaintiff up for failure. Plaintiff depo. at 259-260. On May 18, 2009, the plaintiff submitted a memo to Amber Davis, Melissa Austin and upper management stating that due to working multiple shifts short of staff, the plaintiff was exhausted and therefore would not be able to work her shift that evening. *Id.* at 275. On May 28, 2009, the plaintiff reported to work and Melissa Austin told her she would not be the charge nurse that day. *Id.* at 280. The plaintiff asserts that Dawn Leonard was scheduled to be charge nurse that shift. *Id.* at 281.

On May 31, 2009, the plaintiff wrote a letter to Melissa Austin with a copy to Amber Davis concerning the prior three shifts she worked. Defendant exhibit 29 to plaintiff depo.; plaintiff depo. at 305. In it, she also complains that Dawn Leonard, as charge nurse, placed her in an unfair assignment where she received two critical patients at one time. Plaintiff depo. at 305-306; defendant exhibit 29 to plaintiff depo. Dawn Leonard is African-American. Plaintiff depo. at 306, 308. She also complains about working under Queen Dial as charge nurse, who is also African-American. Plaintiff depo. at 309-310; defendant exhibit 29 to plaintiff depo.

At the beginning of June 2009 the plaintiff alleges she was placed on a thirty day action plan without being given a reason. Plaintiff depo. at 274. When she met with Ann Lewis, from human resources, she was not told that no action plan existed.

*Id*. at 284.  Because of the content of plaintiff's May letter, Ann Lewis met with plaintiff and Melissa Austin.  Ann Lewis declaration,¶ 5.  She recorded the events of that meeting shortly thereafter.  *Id.*, ¶ 6.  About a week prior to this meeting, Ann Lewis learned of the April Fool's joke, then heard that plaintiff refused to work as charge nurse on May 28, 2009, and that despite staff violations, the plaintiff would not enforce rules on her shift.  *Id.*, ¶¶ 10-12.  Additionally, Ann Lewis found the plaintiff showed disrespect toward her immediate supervisor, Melissa Austin, and wholly quit participating in this meeting.  *Id.*, ¶¶ 16-17.  Based on the information concerning events prior to the meeting, as well as the plaintiff's unwillingness to improve her relationship with her supervisors or to discuss concerns with her supervisors, Ann Lewis recommended to Amber Davis that plaintiff be terminated.  *Id.*, ¶ 19.

 The plaintiff states that the record of that meeting made by Ann Lewis is almost totally false, including that she was not asked to take a few days off to think about her request to step down as charge nurse, but rather she was told not to assume charge shifts and that she was placed on a thirty day plan of action.  Plaintiff depo. at 285-286.  She never complained to anyone that she was being treated differently because of her race.  *Id*. at 294-295.  The schedule does reflect that the plaintiff had six or seven days off after the June 5, 2009, meeting.  *Id*. at 316.  She was supposed to return to work on June 18, but was terminated on June 16 or 17.  *Id*. at 319-320.

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct.

2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56. The court must still find that summary judgment is appropriate from the pleadings and the evidence. However, "the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23.

### III.  Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). Applying these standards, the court has considered the plaintiff's claims.

Having reviewed the complaint, the deposition of plaintiff, and the other evidence submitted by the defendant, the court can find no genuine issue of material fact on which this case may proceed to trial. The plaintiff's claims, as detailed in her

deposition, concern not knowing about job openings for which she may have wanted to apply, and which she never mentioned in her EEOC charge. She also claims African-American charge nurses gave her an unfair workload, and that she was terminated because she is African-American, although she has no evidence of this.

Viewed in the light most favorable to the plaintiff, the court is unable to find evidence which could satisfy the plaintiff's burden under Rule 56, Fed.R.Civ.Pro., let alone which could establish each essential element of her case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

## IV. Conclusion

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact on her claims, the court is of the opinion that the defendant's motion for summary judgment is due to be granted and shall so rule by separate Order.

**DONE** and **ORDERED** this the 14th day of March, 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE